**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **WILLIAM MOORE,** | ) | |
| **Plaintiff,** | ) | **Civil Action No. 7:07cv00196** |
| | ) | |
| | ) | **MEMORANDUM OPINION** |
| | ) | |
| **VIRGINIA DEPARTMENT OF** | ) | **By: Hon. Glen E. Conrad** |
| **CORRECTIONS,** | ) | **United States District Judge** |
| **Defendant.** | ) | |

Plaintiff William Moore, a Virginia inmate proceeding pro se, brings this action under the Civil Rights Act, 42 U.S.C. § 1983, alleging that defendants at the Halifax Correctional Unit forced him "to work while injured" and threatened him with retaliation if he kept complaining of pain.[1, 2] Plaintiff seeks punitive damages in the amount of $25,000.00. The court finds that Moore's complaint fails to state a claim upon which the court may grant relief. Therefore, the court will dismiss the suit pursuant to 28 U.S.C. § 1915A(b)(1).[3]

**I.**

Plaintiff alleges that he was "[f]orced to work while injured" and that he "was diagnosed with a disfunctional [sic] elbow with limited range of motion from re-injury @ [sic] 12-06." He further alleges that he was "[t]hreatened with retaliation if [he] kept complaining of pain" and that "Maj. Carter threatened to lock [him] down and take good time."

---

[1] The court notes that plaintiff's complaint states that he is an inmate at Pulaski Correctional Center; however, his grievances indicate that he was an inmate at the Halifax Correctional Unit when the events of which he complains occurred.

[2] Plaintiff has not named proper defendants. Virginia Department of Corrections, as an agency of the state, is not a "person" within the meaning of § 1983. Will v. Michigan Dep't of State Police, 491 U.S. 58 (1989).

[3] Section 1915A(b)(1) provides that the court shall dismiss a complaint as soon as practicable if the court determines that it is frivolous, malicious, or fails to state a claim upon which relief may be granted.

Dockets.Justia.com

Plaintiff has provided documentation of his exhaustion of administrative remedies. At the first stage of the grievance procedure, plaintiff filed an informal complaint, dated February 9, 2007, requesting assistance from a nurse. The informal complaint stated, in pertinent part:

> I want to know why do I got to keep going on the road with a bush ax. When I come in and say somethings [sic] wrong with my arm, and today my hand was swoleing [sic] from elbow fraction [sic] from when I came here to Halifax from Deep Metals [sic].[4] Now the nurse knew and knows my situation, I keep complaining about the bush ax is affecting my arm and she only says put a warm rag on it, and go out there back at it. Do they want me to start the injury all over, it seems like it. Because I get the same thing when I go to see the nurse. Everything was O.K. into [sic] I started swinging bush axes.

A nurse[5] gave the following reply, dated February 16, 2007, to plaintiff's February 9, 2007, informal complaint: "You are classified as medical code A. There are no restrictions on your ability to work."

Plaintiff submitted another informal complaint, dated February 13, 2007, requesting assistance from the superintendent. Plaintiff stated:

> I want to know why did your Major Cannon threating [sic] to take my good time, and boost my level up. Just because I say my arm bothering me when I go out in [sic] swing that bush ax. Now your nurses here knows [sic] I have roomatory [sic] artherightus [sic], and I complain to them about swinging that bush ax hurts my arm. They tell me put a warm rag on it, go to pill call. And go back at it tomorrow. Now when the major told me what he told me yesterday about messing with my time, I have and had know [sic] choose [sic] but to go back out there in [sic] try to maintain with my defunctional [sic] arm. [E]verything is in my file. I want to know what would you say about this.

Plaintiff received the following response, dated February 21, 2007: "If you have problems medically, you should see Medical. If Medical tells you to go to work, then you go to work. The

_____

[4] Plaintiff is probably referring to the Deep Meadow Correctional Center, a Virginia Department of Corrections facility located in Powhatan County.

[5] The nurse's signature is illegible; however, the "RN" after the signature is clearly legible.

major informed you of action that he is going to take if . . . [illegible] nothing is found to be wrong with you."

Subsequently, plaintiff filed a regular grievance. The grievance, which was dated February 20, 2007, and received by the superintendent's office on February 21, 2007, expressed the following complaint:

> I want to know why do I got to keep going on the road with bush axes working when I come in and say somethings [sic] wrong with my arm again, and today 2-9-07 [sic] my hand was swoleing [sic] from elbow fraction [sic] from when I came here to Halifax from Deep Metals [sic]. Now the nurse knew and knows my situation I keep complaining about the bush ax is affecting my arm. And "she only says to me" [sic] put a warm rag on it, and it does no good because my arm swelled up since then. But she tells me to go back out there and give it a try. And I only see my arm getting worser [sic]. And what's even worser [sic] I got threating [sic] by Major Carter that if I keep coming in saying my arm hurts, I would go to the hole get my level raned [sic] up, and my good time tooking [sic] from me. So now I have know [sic] choice but to go out in [sic] work with this bad arm I have to work with. The crazy thing they medically clear me to code A. I'm not physically fit for that work any way.

Plaintiff added that he wanted the following action taken: "For everyday [sic] I go out into [sic] when I go home and go to my doctor I want them to pay for it all."

On March 9, 2007, the superintendent issued a Level I grievance response form, denying plaintiff's grievance. The Level I response stated that plaintiff was "classified as medical Code A" and that "there are no restrictions on [his] ability to work." The Level I respondent also stated that further investigation indicated that on December 13, 2006, plaintiff had been seen at the Medical College of Virginia

> where it was determined that your right elbow fracture was healed. Also that the range of the right elbow has no restrictions. Per Medical Staff Personnel, Nurse Francis.
>
> **In accordance with IOP717 – Medical Screening & Classification Code A, there are no special accommodations for activities, programs or services.**

3

**After thoroughly reviewing the information presented by staff in response to your complaint and the policy governing the issue, your grievance is deemed to be UNFOUNDED.**

Plaintiff was advised that if he was dissatisfied with the Level I response, he could appeal to the Director of Health Service for the Virginia Department of Corrections.

Plaintiff timely appealed. The Level II respondent denied plaintiff's appeal, stating, in pertinent part:

> Your grievance appeal has been reviewed along with the response from Level I, and your original complaint that you want to know why you have to keep going on the road with a bush axe working when on 2/9/07 your hand was swollen from an elbow fracture from when you came from Deep Meadows. You want the DOC to pay for your medical attention now and upon release.
>
> Based on the information provided and upon further investigation, I concur with the Level I respondent and determine your grievance **UNFOUNDED**. According to the information available, you were seen by orthopedics at MCV in December 2006 [regarding] you're [sic] fracture. Physical Therapy evaluated you on 12/13/06 and released you with "Range of Motion Rt. Elbow. No Restrictions." The nurse evaluated you on 2/7/07 and no swelling was noted. There is no indication that you cannot perform you [sic] duties on the road gang. You may submit a sick call request to the medical department if you feel your condition is not improving. There is no violation of the standard of practice regarding this issue. Please address any further concerns to the medical department.

Plaintiff was informed that the Level II response was the final level of appeal for his grievance.

## II.

### A. Medical Diagnosis

In order to state a cognizable claim for denial of medical care under the Eighth Amendment, a plaintiff must allege facts sufficient to demonstrate a deliberate indifference to a serious medical need. Estelle v. Gamble, 429 U.S. 97, 104 (1976). To establish deliberate indifference, a plaintiff must present facts to evince that the defendants had actual knowledge of and disregard for an

4

objectively serious medical need. Farmer v. Brennan, 511 U.S. 825 (1994); see also, Rish v. Johnson, 131 F.2d 1092, 1096 (4th Cir. 1997). Disagreements between an inmate and medical personnel over diagnosis or course of treatment and allegations of malpractice or negligence in treatment are not cognizable constitutional claims under the Eighth Amendment. Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985); Estelle, 429 U.S. at 105-06. To bring such a claim against non-medical prison personnel, an inmate must show that such officials were personally involved with a denial of treatment, deliberately interfered with a prison doctor's treatment, or tacitly authorized or were indifferent to the prison physician's misconduct. Miltier v. Beorn, 896 F.2d 848 (4th Cir. 1990). Additionally, an inmate is not entitled to unqualified access to health care; the right to medical treatment is limited to that treatment which is medically necessary and not to "that which may be considered merely desirable." Bowring v. Godwin, 551 F.2d 44, 47-48 (4th Cir. 1977). Indeed, in the context of short-term incarceration, states may absolutely deny inmates elective medical treatment. Kersh v. Bounds, 501 F.2d 585, 588-89 (4th Cir. 1974).

Moore has not made any showing that a constitutional right has been violated. Although he believes that the institutional staff and medical staff were deliberately indifferent to his medical needs or failed to treat such medical needs by not giving him diagnoses with which he agrees and thereby rating him fit to work, such actions do not rise to the level of a federal constitutional violation. Nor has Moore alleged an objectively serious medical need. Inasmuch as plaintiff's own complaint and attachments demonstrate that his claim amounts to a mere disagreement between an inmate and medical personnel over his diagnosis, his claim would arise, if at all, under state medical malpractice laws, and does not present a colorable claim under § 1983. See Estelle, 429 U.S. at 105-106.

5

Accordingly, the court finds that Moore has failed to state a claim under the Eighth Amendment because he has not shown that institutional or medical staff were deliberately indifferent to any serious medical need.

## B. Work Assignment

The Eighth Amendment protects prisoners from cruel and unusual living conditions. <u>Rhodes v. Chapman</u>, 452 U.S. 337 (1981). However, an inmate is not entitled to relief simply because of exposure to uncomfortable, restrictive, or inconvenient conditions of confinement, for, "[t]o the extent that such conditions are restrictive or even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." <u>Id.</u> at 347. In fact, to state a claim of constitutional significance regarding prison conditions, a plaintiff must allege facts sufficient to show either that he has sustained a serious or significant mental or physical injury as a result of the challenged conditions or that the conditions have created an unreasonable risk of serious damage to his future health. <u>Strickler v. Waters</u>, 989 F.2d 1375, 1380-1381 (4th Cir. 1993).

An Eighth Amendment claim requires that an inmate show that prison officials were deliberately indifferent to a substantial risk of serious harm. <u>Farmer</u>, 511 U.S at 833. To establish deliberate indifference, Moore must show that prison officials knew of and disregarded an excessive risk of harm; mere negligence as to his safety is insufficient. <u>Id.</u> at 838; <u>Estelle</u>, 429 U.S. at 104. Moreover, in order to show the deprivation of a liberty interest regarding work assignments, an inmate must show either (1) that the conditions exceed the sentence imposed in such an unexpected manner as to give rise to protection by the Due Process Clause by its own force or (2) that the assignment creates an atypical or significant hardship and that the state has granted its inmates, by regulation or by statute, a protected liberty interest in remaining free from that confinement or

6

restraint. <u>Sandin v. Conner</u>, 515 U.S. 472, 483-84 (1995).

Given that plaintiff's disagreement with institutional and medical staff over his diagnosis does not rise to the level of a federal constitutional violation; that he does not allege an objectively serious medical need; and that his claim would arise, if at all, under state medical malpractice laws, and does not present a colorable claim under § 1983, plaintiff cannot show that institutional and medical staff were deliberately indifferent to a substantial risk of serious harm with regard to his work assignment.

## C. Threats and Retaliation

Plaintiff alleges that he was "[t]hreatened with retaliation if [he] kept complaining of pain." In plaintiff's view, his constitutional rights were violated when institutional staff advised him that, if he continued to complain about having to work on the road gang despite having been medically reviewed and classified as fit to work, he would be sent "to the hole," or have his security level raised, or lose good time credits.

In order to state a retaliation claim, the "plaintiff must allege either that the retaliatory act was taken in response to the exercise of a constitutionally protected right or that the act itself violated such a right." <u>Adams v. Rice</u>, 40 F.3d 72, 75 (4th Cir. 1994). An inmate must present more than conclusory allegations of retaliation. <u>Id.</u> at 74. To state a <u>prima facie</u> claim of retaliation under § 1983, an inmate must allege facts showing that his exercise of a constitutionally protected right was a substantial factor motivating the retaliatory action. <u>See, e.g.</u>, <u>Hughes v. Bledsoe</u>, 48 F.3d 1376, 1386 n. 11 (4th Cir. 1995), citing <u>Mt. Healthy City School District Board of Education v. Doyle</u>, 429 U.S. 274, 287 (1977); <u>Wagner v. Wheeler</u>, 13 F.3d 86, 90-91 (4th Cir. 1993). Plaintiff must also allege that, as a result of the retaliatory action, he suffered some adverse impact on the continued

exercise of his constitutional rights. American Civil Liberties Union v. Wicomico County, 999 F.2d 780, 784 (4th Cir. 1993) (finding that changes in prison regulations created a mere inconvenience to the exercise of constitutional rights and the inconvenience alone was not enough to constitute actionable retaliation).

Here, plaintiff has not invoked a constitutionally protected right. Nor has he raised more than a conclusory allegation of retaliation. The most plaintiff has alleged is that he was threatened; however, mere threats do not state a claim. The constitution does not "protect against all intrusions on one's peace of mind." Pittsley v. Warish, 927 F.2d 3, 7 (1st Cir. 1991). A guard's verbal harassment or idle threats to an inmate, even if they cause an inmate fear or emotional anxiety, do not constitute an invasion of any identified liberty interest. See Emmons v. McLaughlin, 874 F.2d 351, 354 (6th Cir. 1989); Lamar v. Steele, 698 F.2d 1286 (5th Cir. 1983) ("Threats alone are not enough. A section 1983 claim only accrues when the threats or threatening conduct result in a constitutional deprivation"). The law is clear that mere "threatening language and gestures of [a] penal officer do not, even if true, constitute constitutional violations." Fisher v. Woodson, 373 F. Supp. 970, 973 (E.D. Va. 1973).

Additionally, insofar as plaintiff was threatened with the loss of good time credits, he does not allege that he actually lost any good time credits; thus, his situation does not present a case in which the complained-of action "will inevitably affect the duration of his sentence." See Sandin, 515 U.S. at 487; see also Bulger v. United States Bureau of Prisons, 65 F.3d 48, 50 (5th Cir. 1995) (applying Sandin). Therefore, no constitutionally protected liberty interest is at stake in plaintiff's claim. Accordingly, plaintiff has failed to state a claim of retaliation "in response to the exercise of a constitutionally protected right or that the act itself violated such a right." Adams, 40 F.3d at 75.

8

## III.

Based on the foregoing, the court finds that Moore has not presented any claims on which relief can be granted. Therefore, the court will dismiss the complaint without prejudice pursuant to 28 U.S.C. § 1915A(b)(1).

The plaintiff is advised that he may appeal this decision pursuant to Rules 3 and 4 of the Federal Rules of Appellate Procedure by filing a notice of appeal with this court within 30 days of the date of entry of this Order, or within such extended period as the court may grant pursuant to Rule 4(a)(5).

**ENTER**: This ___25th___ day of April, 2007.

_____
United States District Judge